**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ________________________

FINISH TIME HOLDINGS, LLC,

Plaintiff,

v.

STRAVA, INC.,

Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff Finish Time Holdings, LLC ("Plaintiff" or "Finish Time") files its Complaint with Jury Demand for patent infringement against Defendant Strava, Inc. ("Defendant" or "Strava"), alleging as follows:

## PARTIES

1. Finish Time is a limited liability company existing under the laws of Texas with its principal place of business at 4336 US Highway 377 S, Aubrey, Texas 76227-7013.

2. On information and belief, Strava is a corporation organized under the laws of Delaware with principal places of business at 181 Fremont Street, Floor 27, San Francisco, California 94105 and 1444 Wazee Street Suite 205, Denver, Colorado 80202. Strava may be served with process via its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

3. This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 101, *et seq*. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Strava has committed acts of infringement in this district and has a regular and established place of business in this district located at 1444 Wazee Street Suite 205, Denver, Colorado 80202.

5. The Court has general personal jurisdiction over Strava by virtue of Strava's regular and established place of business in this district.

## THE TECHNOLOGY AND INTELLECTUAL PROPERTY

6. Finish Time is a Texas limited liability company founded by Todd Martin ("Martin" or "Mr. Martin"). Like many small inventors, Mr. Martin was not paid by his employer to develop his inventions in a laboratory. Instead, Mr. Martin developed his inventions by solving problems he faced in pursuing his passions.

7. Mr. Martin is an avid runner and athlete. He has participated in multiple age group world championships in these sports. He has also run the Boston Marathon – one of the more prestigious marathons, if not the most prestigious marathon, in the world and the only high-profile marathon in which almost every runner must qualify by meeting time requirements in another marathon – on several occasions.

8. While biking down a steep hill one day, at a speed of about 50 miles per hour, Mr. Martin realized that his tires might be a bit too worn. Mr. Martin realized that a puncture would be very inconvenient and dangerous for someone on a bike traveling at that rate of speed down a

steep hill with oncoming traffic on the other side of the road. Mr. Martin developed an equipment usage tracking invention so that he could know ahead of time when pieces of athletic gear were near a state of being too worn, which if continued to be used, could lead to injury (or worse).

9. As Mr. Martin progressed in his athletic endeavors, he became interested in qualifying for the Ironman World Championships. It occurred to Mr. Martin that he needed expert coaching to get him there, and that such coaches can do a better coaching job if they know how their athlete is training. To address this problem, Mr. Martin developed a solution that permitted coaches to keep track of their athletes with more precision and in a more timely manner than was then available. Since many coaches typically charge for their services, an athlete would be wasting time and money unless their coach is very aware and familiar with the athlete and his or her performance. Mr. Martin's invention permits a coach to better track and coach their athlete, leading to improved outcomes for both the athlete and the coach.

10. Mr. Martin has continued to find solutions that facilitate performance in the sports he loves. Indeed, Mr. Martin's latest invention – which is not a part of this litigation – involves the use of facial recognition timing, which is part of the reason for the company's name. Mr. Martin hopes his inventions will revolutionize the sports he loves, and make things easier for athletes, coaches, and people seeking to maintain a healthy lifestyle.

11. On May 24, 2016, U.S. Patent No. 9,345,948 ("the '948 Patent") was duly and legally issued by the United States Patent and Trademark Office ("USPTO") for an invention entitled "System for providing a coach with live training data of an athlete as the athlete is training." *See* Exhibit 1, attached hereto and incorporated by reference in its entirety.

12. On February 13, 2018, U.S. Patent No. 9,889,340 ("the '340 Patent") was duly and legally issued by the USPTO for an invention entitled "Method for providing a coach with live training data of an athlete as the athlete is training." *See* Exhibit 2, attached hereto and incorporated by reference in its entirety.

13. On June 18, 2019, U.S. Patent No. 10,322,314 ("the '314 Patent") was duly and legally issued by the USPTO for an invention entitled "Method for providing a coach with live training data of an athlete as the athlete is performing a swimming workout." *See* Exhibit 3, attached hereto and incorporated by reference in its entirety.

14. On October 6, 2020, U.S. Patent No. 10,792,537 ("the '537 Patent") was duly and legally issued by the USPTO for an invention entitled "System and method for providing a coach with live training data of an athlete as the athlete is performing a training workout." *See* Exhibit 4, attached hereto and incorporated by reference in its entirety.

15. On October 13, 2020, U.S. Patent No. 10,799,763 ("the '763 Patent") was duly and legally issued by the USPTO for an invention entitled "System and method for providing a coach with live training data of an athlete as the athlete is performing a swimming workout." *See* Exhibit 5, attached hereto and incorporated by reference in its entirety.

16. On February 16, 2021, U.S. Patent No. 10,918,911 ("the '911 Patent") was duly and legally issued by the USPTO for an invention entitled "System and method for providing a coach with live training data of an athlete as the athlete is performing a cycling workout." *See* Exhibit 6, attached hereto and incorporated by reference in its entirety.

17. On June 1, 2021, U.S. Patent No. 11,024,413 ("the '413 Patent") was duly and legally issued by the USPTO for an invention entitled "Method and device for providing a coach

with training data of an athlete as the athlete is performing a swimming workout." *See* Exhibit 7, attached hereto and incorporated by reference in its entirety.

18. On September 14, 2021, U.S. Patent No. 11,120,902 ("the '902 Patent") was duly and legally issued by the USPTO for an invention entitled "System and method for providing a person with live training data of an athlete as the athlete is performing a cycling workout." *See* Exhibit 8, attached hereto and incorporated by reference in its entirety.

19. On February 8, 2022, U.S. Patent No. 11,244,751 ("the '751 Patent") was duly and legally issued by the USPTO for an invention entitled "Method and device for providing a person with training data of an athlete as the athlete is performing a swimming workout." *See* Exhibit 9, attached hereto and incorporated by reference in its entirety.

20. On May 3, 2022, U.S. Patent No. 11,322,240 ("the '240 Patent") was duly and legally issued by the USPTO for an invention entitled "Method and device for providing a person with training data of an athlete as the athlete is performing a running workout." *See* Exhibit 10, attached hereto and incorporated by reference in its entirety.

21. On November 7, 2023, U.S. Patent No. 11,810,656 ("the '656 Patent") was duly and legally issued by the USPTO for an invention entitled "System for providing a coach with live training data of an athlete as the athlete is training." *See* Exhibit 11, attached hereto and incorporated by reference in its entirety.

22. On March 5, 2024, U.S. Patent No. 11,923,066 ("the '066 Patent") was duly and legally issued by the USPTO for an invention entitled "System and method for providing a trainer with live training data of an individual as the individual is performing a training workout." *See* Exhibit 12, attached hereto and incorporated by reference in its entirety.

23. On June 24, 2025, U.S. Patent No. 12,340,891 ("the '891 Patent") was duly and legally issued by the USPTO for an invention entitled "System and method for providing a trainer with live training data of an individual as the individual is performing a training workout." *See* Exhibit 13, attached hereto and incorporated by reference in its entirety.

24. The '948 Patent, the '340 Patent, the '314 Patent, the '537 Patent, the '763 Patent, the '911 Patent, the '413 Patent, the '902 Patent, the '751 Patent, the '240 Patent, the '656 Patent, the '066 Patent and the '891 Patent (collectively, "the Asserted Patents") claim priority to U.S. Pat. App. No. 14/054,879, filed on October 16, 2013, and to U.S. Provisional App. No. 61/715,847, filed on October 19, 2012.

25. Finish Time is the owner of the Asserted Patents, with all substantive rights in and to those patents, including the sole and exclusive right to prosecute this action and enforce the Asserted Patents against infringers, and to collect damages for all relevant times.

**<u>PATENT ELIGIBILITY</u>**

26. The claimed subject matter of the Asserted Patents is patent eligible under 35 U.S.C. § 101 ("Section 101").

27. During prosecution of the '948 Patent, the Examiner initially rejected all claims under Section 101. Applicant argued that the claimed subject matter was a concrete application, *i.e.*, a combination of a training log server that is synchronized to a device worn by an athlete, and a specifically configured processor, and therefore was not an abstract idea. Applicant further noted that the claims recited a training log server "synced to a device worn by the athlete so that data from the device worn by the athlete is entered into said training record as the athlete is training," and a processor configured to "provide the coach with access to the training record as the data is

being entered into the training record." A training log server and processor so configured do not attempt to improperly monopolize any abstract idea. Applicant further argued that the claimed processor is configured to "provide the coach with access to the training record as the data is being entered into the training record," which is specific and unconventional and transforms an otherwise general purpose computer into a special purpose computer that imparts a meaningful limitation and/or adds significantly more technical detail to the abstract idea itself. Applicant further argued that the claimed dashboard and platform each permit the live updating of the user's training record and allow the coach to alter a workout on the spot if the athlete is not training within the expected parameters set out in the workout, which is important for avoiding or reducing injuries caused by over-training of the athlete. The claimed subject matter was also argued to be confined to a particular environment or technical field, namely, provision of live training data of an athlete to a coach. In response to these arguments, the Examiner withdrew, properly, the rejection under Section 101 and issued a Notice of Allowance. A true and correct copy of the prosecution history of the '948 Patent is attached hereto as Exhibit 14.

28. During prosecution of the '340 Patent, the Examiner initially rejected all claims under Section 101. Applicant noted that the claims include limitations specific to the solution of a technical problem, or improvement in the functioning of technology, particularly by reciting a method that utilizes both a web-based platform and a mobile tracking device carried with the athlete to provide a coach with live training data as the athlete performs a training workout. Applicant further noted that the claims do not recite the abstract concepts of "providing a coach with live training data of an athlete," as claimed by the Examiner. Instead, the claims recite specific steps to carry out the claimed method. Applicant further noted that the claim language confined

the claim to a specific, and concrete, useful application. Specifically, the claimed methods permit the live updating of the training record or log, and could allow the coach to alter a workout on the spot if the athlete is not training within expected parameters set out in the workout, which is important for avoiding or reducing injuries. In response to these arguments, the Examiner withdrew, properly, the rejection under Section 101. A true and correct copy of the prosecution history of the '340 Patent is attached hereto as Exhibit 15.

29. The '314 Patent, the '537 Patent, the '763 Patent, the '911 Patent, the '413 Patent, the '902 Patent and the '751 Patent were all properly allowed without Section 101 rejections. True and correct copies of the prosecution histories for those patents are attached hereto as Exhibits 16-22.

30. During prosecution of the '240 Patent, the Examiner initially rejected four claims under Section 101. Applicant amended those claims to recite specific structures, and the Section 101 rejection was properly withdrawn. A true and correct copy of the prosecution history of the '240 Patent is attached hereto as Exhibit 23.

31. The '656 Patent, the '066 Patent and the '891 Patent were all allowed without Section 101 rejections. True and correct copies of the prosecution histories for those patents are attached hereto as Exhibits 24-26.

32. The inventions described in the shared specification of the Asserted Patents are directed toward an improvement in computer functionality. For example, the claimed inventions improve the security and efficiency of a data monitoring system by, *e.g.*, enabling a processor to generate a graphic user interface for use in associating a workout, limiting access to training data to authorized individuals, and enabling the use of mobile tracking devices of various types to obtain

and transmit training data for use in a tracking system. Importantly, the Asserted Patents accomplish these improvements through specific technical solutions involving particular technical structures, operating in a defined manner. The Asserted Patents at least provide for greater functionality in security and the collection, processing, synchronization, distribution and display of data, which have consistently been held to be patent eligible under Section 101.

33. The inventions described in the shared specification of the Asserted Patents rely on a specific ordered combination of physical components, as shown in Fig. 1:




FIG. 1

34. As can be seen in Figure 1, the shared specification describes a platform (102) with a specific arrangement of specialized databases and servers (106 and 116), and in particular a training log server (116) synced to a device worn by an athlete that provides real-time workout data as the athlete is performing the workout. The training log server (116) can store the athlete's training information in a training log database (118). The operation of this physical structure is governed by a specialized processor that accomplishes improved data handling via the method discussed above. This specialized approach to data processing and display, using a novel combination of hardware components, was not routine, conventional or well-understood at the time of invention.

35. As another example, the shared specification describes a specific ordered combination of physical components, as shown in Fig. 9:




*FIG. 9*

36. As can be seen in Figure 9, the shared specification describes a specified arrangement of devices (140, 102, 138), including a mobile tracking device (140) configured to communicate with a platform (102) including a training log server as the athlete is performing the

workout, a database storing training plans (138) that may be on a device of a person such as a coach or may be maintained by the platform (102), and the platform (102). The operation of the platform is governed by a specialized processor that accomplishes improved data handling via the method discussed above. This specialized approach to data processing and display using a novel combination of hardware components was not routine, conventional or well-understood at the time of invention.

37. Various aspects of these inventions are embodied in the claims of the Asserted Patents, none of which are directed to an abstract idea under Step One of the analysis in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).

38. Because the Asserted Patents are not directed to abstract ideas under *Alice* Step One, it is not necessary to consider the Asserted Patents under *Alice* Step Two. *Alice* Step Two is a fact-intensive inquiry that requires consideration of real-world knowledge and practices and whether a claim limitation or combination of limitations is well-understood, routine, and conventional given the state of the art at the time of invention.

39. On September 30, 2025, Strava filed a patent infringement lawsuit in this Court against Garmin Ltd. and Garmin International, Inc. (collectively, "Garmin"). A true and correct copy of Strava's complaint against Garmin is attached hereto as Exhibit 27. Strava characterized its own patent in that case as directed to "a computer-implemented method for matching a previously defined route segment to an effort by receiving a user-submitted definition of the segment, associating the segment with a first set of GPS data, and generating a virtual start line for the segment by determining a path through a user-selected segment start point, determining an orientation of the path, and setting the virtual start line in relation to the orientation." (Ex. 27 ¶ 64.)

Strava further stated that "[t]he invention of the [Strava] Patent is directed toward an improvement in computer functionality. For example, the [Strava] Patent improves the security and efficiency of a data monitoring system." (*Id.*) Thus, Strava's patent, like the Asserted Patents here, is directed to the collection, processing and display of athletic training data using geographic information and secure access.

40. Strava alleged that its patent "claims specific improvements that include comparing a second set of GPS data associated with an effort to the virtual start line, determining that the second set crosses the virtual start line—including generating an extrapolation from at least a portion of the second set based at least in part on associated data comprising one or more types of performance metrics—determining that the extrapolation crosses the virtual start line, determining that the effort matches the segment based at least in part on the crossing, and accessing information associated with the matched segment." (*Id.*)

41. Strava further alleged that the claims of its patent "recite concrete data-structuring and control logic. For example, the claims require generating a virtual start line for a user-defined segment by deriving a path through the user-selected start point from recorded GPS data, determining the path's orientation, and setting the start line in relation to that orientation; they then require determining a match by comparing the effort's GPS data to that start line and finding a crossing using an extrapolation computed from associated performance metrics (e.g., speed/time)." (*Id.* ¶ 66.)

42. The inventions described and claimed in the Asserted Patents are less abstract than the asserted claims of the Strava patent asserted against Garmin. Strava's asserted patent is limited to gathering geographic data and generating a virtual start line by determining a geographic path;

the Asserted Patents here are directed to specific combinations of technical components, recording various types of training data, and enabling, in real time, access to that data based on secure authorization. Thus, Strava's own arguments concerning patent eligibility apply *a fortiori* to the Asserted Patents here, confirming patent eligibility.

**STRAVA'S INFRINGING CONDUCT**

43. Strava is an online fitness tracking platform, advertising itself as "the app for active people." (*See* "About Us," *available at* https://www.strava.com/about (last accessed August 2026 and incorporated by reference).) Through its website and mobile app (collectively, "the Strava App"), Strava enables users to "track your running and riding with GPS, join Challenges, share photos from your activities, and follow friends." ("Running App and Cycling App | Strava," *available at* https://www.strava.com/mobile (last accessed August 2026 and incorporated by reference).) According to press reports, Strava has "more than 150 million registered users worldwide." ("Strava Valuation Powers Up To $2.2B As Fitness Startup Funding Falters," *available at* https://news.crunchbase.com/venture/fitness-startup-funding-falters-strava-raise/ (last accessed August 2026 and incorporated by reference).)

44. Strava's platform is built on several aspects of Finish Time's patented technology. For example, the social aspect of Strava's platform relies on enabling users to share their workout data. Further, through lucrative collaborations with third-party device manufacturers such as Garmin, Oakley, and FORM, Strava has exploited the use of wearable tracking devices to record and share exercise data in a manner first developed by Finish Time.

45. As set forth in the exemplary claim charts attached as Exhibits 28-40, the Strava App meets each and every element of at least one claim of each Asserted Patent.

**<u>FIRST CLAIM FOR RELIEF</u>**
**(Infringement of U.S. Patent No. 9,345,948)**

46. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

47. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '948 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '948 Patent is attached hereto as Exhibit 28.

48. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '948 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '948 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '948 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '948 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '948 Patent, and users thereof directly infringe one or more claims of the '948 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '948 Patent.

49. Due to Strava's knowledge of the '948 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '948 Patent has been and continues to be willful since no later than that date.

50. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

51. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

**SECOND CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 9,889,340)**

52. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

53. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '340 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '340 Patent is attached hereto as Exhibit 29.

54. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '340 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '340 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '340 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken,

directly infringe one or more claims of the '340 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '340 Patent, and users thereof directly infringe one or more claims of the '340 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '340 Patent.

55. Due to Strava's knowledge of the '340 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '340 Patent has been and continues to be willful since no later than that date.

56. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

57. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

## THIRD CLAIM FOR RELIEF
## (Infringement of U.S. Patent No. 10,322,314)

58. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

59. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '314 Patent in violation of 35 U.S.C. § 271(a). Strava's

infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '314 Patent is attached hereto as Exhibit 30.

60. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '314 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '314 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '314 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '314 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '314 Patent, and users thereof directly infringe one or more claims of the '314 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '314 Patent.

61. Due to Strava's knowledge of the '314 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '314 Patent has been and continues to be willful since no later than that date.

62. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

63. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's

infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

**FOURTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 10,792,537)**

64. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

65. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 21 of the '537 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 21 of the '537 Patent is attached hereto as Exhibit 31.

66. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '537 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '537 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '537 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '537 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '537 Patent, and users thereof directly infringe one or more claims of the '537 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '537 Patent.

67. Due to Strava's knowledge of the '537 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '537 Patent has been and continues to be willful since no later than that date.

68. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

69. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

**FIFTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 10,799,763)**

70. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

71. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '763 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '763 Patent is attached hereto as Exhibit 32.

72. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '763 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '763 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '763 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken,

directly infringe one or more claims of the '763 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '763 Patent, and users thereof directly infringe one or more claims of the '763 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '763 Patent.

73. Due to Strava's knowledge of the '763 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '763 Patent has been and continues to be willful since no later than that date.

74. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

75. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

**SIXTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 10,918,911)**

76. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

77. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '911 Patent in violation of 35 U.S.C. § 271(a). Strava's

infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '911 Patent is attached hereto as Exhibit 33.

78. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '911 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '911 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '911 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '911 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '911 Patent, and users thereof directly infringe one or more claims of the '911 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '911 Patent.

79. Due to Strava's knowledge of the '911 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '911 Patent has been and continues to be willful since no later than that date.

80. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

81. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's

infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

**SEVENTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 10,024,413)**

82. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

83. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 12 of the '413 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 12 of the '413 Patent is attached hereto as Exhibit 34.

84. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '413 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '413 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '413 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '413 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '413 Patent, and users thereof directly infringe one or more claims of the '413 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '413 Patent.

85. Due to Strava's knowledge of the '413 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '413 Patent has been and continues to be willful since no later than that date.

86. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

87. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

## EIGHTH CLAIM FOR RELIEF
## (Infringement of U.S. Patent No. 11,120,902)

88. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

89. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '902 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '902 Patent is attached hereto as Exhibit 35.

90. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '902 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '902 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '902 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken,

directly infringe one or more claims of the '902 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '902 Patent, and users thereof directly infringe one or more claims of the '902 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '902 Patent.

91. Due to Strava's knowledge of the '902 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '902 Patent has been and continues to be willful since no later than that date.

92. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

93. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

## NINTH CLAIM FOR RELIEF
## (Infringement of U.S. Patent No. 11,244,751)

94. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

95. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 7 of the '751 Patent in violation of 35 U.S.C. § 271(a). Strava's

infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 7 of the '751 Patent is attached hereto as Exhibit 36.

96. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '751 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '751 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '751 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '751 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '751 Patent, and users thereof directly infringe one or more claims of the '751 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '751 Patent.

97. Due to Strava's knowledge of the '751 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '751 Patent has been and continues to be willful since no later than that date.

98. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

99. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's

infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

**TENTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 11,322,240)**

100. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

101. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '240 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '240 Patent is attached hereto as Exhibit 37.

102. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '240 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '240 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '240 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '240 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '240 Patent, and users thereof directly infringe one or more claims of the '240 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '240 Patent.

103. Due to Strava's knowledge of the '240 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '240 Patent has been and continues to be willful since no later than that date.

104. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

105. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

## ELEVENTH CLAIM FOR RELIEF
## (Infringement of U.S. Patent No. 11,810,656)

106. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

107. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '656 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 1 of the '656 Patent is attached hereto as Exhibit 38.

108. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '656 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '656 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '656 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken,

directly infringe one or more claims of the '656 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '656 Patent, and users thereof directly infringe one or more claims of the '656 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '656 Patent.

109. Due to Strava's knowledge of the '656 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '656 Patent has been and continues to be willful since no later than that date.

110. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

111. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

## TWELFTH CLAIM FOR RELIEF
## (Infringement of U.S. Patent No. 11,923,066)

112. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

113. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 5 of the '066 Patent in violation of 35 U.S.C. § 271(a). Strava's

infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 5 of the '066 Patent is attached hereto as Exhibit 39.

114. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '066 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '066 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '066 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '066 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '066 Patent, and users thereof directly infringe one or more claims of the '066 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '066 Patent.

115. Due to Strava's knowledge of the '066 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '066 Patent has been and continues to be willful since no later than that date.

116. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

117. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's

infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

**THIRTEENTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 12,340,891)**

118. Finish Time incorporates the foregoing paragraphs as if fully set forth herein.

119. Strava has made, used, sold, offered for sale, and/or imported into the United States the Strava App. By doing so, Strava has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 5 of the '891 Patent in violation of 35 U.S.C. § 271(a). Strava's infringement in this regard is ongoing. A claim chart showing how the Strava App meets each and every limitation of Claim 5 of the '891 Patent is attached hereto as Exhibit 40.

120. Additionally, and/or alternatively, Strava has indirectly infringed and continues to indirectly infringe one or more of the claims of the '891 Patent, in violation of 35 U.S.C. § 271(b) by actively inducing users of the Strava App to directly infringe one or more claims of the '891 Patent. For example, (a) Strava had actual knowledge of or was willfully blind to the existence of the '891 Patent and its infringement thereof no later than the filing of this Complaint, and (b) Strava intentionally causes, urges, or encourages users of the Strava App to take action that, when taken, directly infringe one or more claims of the '891 Patent. Strava's encouragement is accomplished by promoting, advertising, and instructing customers and potential customers to use the Strava App, including infringing uses thereof. Strava knows (based at least on this Complaint) that its actions will induce users of the Strava App to directly infringe one or more claims of the '891 Patent, and users thereof directly infringe one or more claims of the '891 Patent. For instance, at a minimum, Strava has supplied and continues to supply the Strava App to customers while knowing that use thereof will infringe one or more claims of the '891 Patent.

121. Due to Strava's knowledge of the '891 Patent and of its infringement thereof no later than the filing of this Complaint, Strava's infringement of the '891 Patent has been and continues to be willful since no later than that date.

122. Strava's acts of infringement have occurred within this District and elsewhere throughout the United States.

123. As a result of Strava's infringing conduct, Finish Time has suffered damages. Strava is liable to Finish Time in an amount that adequately compensates Finish Time for Strava's infringement in an amount that is no less than a fully paid-up, lump-sum, reasonable royalty, together with interest and costs as fixed by this Court under 25 U.S.C. § 284.

## PRAYER FOR RELIEF

Finish Time requests that the Court find in its favor and against Strava, and that the Court grant Finish Time the following relief:

A. Judgment that one or more claims of the Asserted Patents has been infringed, either literally and/or under the doctrine of equivalents, by Strava;

B. Judgment that Strava accounts for and pays to Finish Time all damages to and costs incurred by Finish Time because of Strava's infringing activities and other conduct complained of herein, including an award of all increased damages to which Finish Time is entitled under 35 U.S.C. § 284;

C. That this Court declare this an exceptional case and award Finish Time its attorneys' fees and costs in accordance with 35 U.S.C. § 285;

D. Pre-judgment and post-judgment interest on the damages caused to Finish Time by reason of Strava's infringing activities and other conduct complained of herein; and

E. Such other and further relief as the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Finish Time hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 17, 2026

Respectfully submitted,

By: /s/ Matthew C. Holohan

Robert R. Brunelli (CO Bar No. 20070)
rbrunelli@sheridanross.com
Matthew C. Holohan (CO Bar No. 40996)
mholohan@sheridanross.com
Brian S. Boerman (CO Bar No. 50834)
bboerman@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: (303) 863-9700

*ATTORNEYS FOR PLAINTIFF*
*FINISH TIME HOLDINGS, LLC*